**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CARMEN JONES, | : |
| Plaintiff, | : |
| | : |
| v. | :   Civil Action No. 08-1914 (RJL) |
| | : |
| THE WASHINGTON TIMES, *et al.*, | : |
| Defendants. | : |
| | : |

**MEMORANDUM OPINION**

This matter is before the Court on defendants' motions to dismiss or for a more definite statement. For the reasons discussed below, the Court grants defendants' motions in part, and Counts One, Three, and Four of plaintiff's amended complaint may proceed as against The Washington Times, LLC.

## I. BACKGROUND

Plaintiff is an African American female who was at least 40 years of age at all times relevant to the complaint. Amd. Compl. ¶¶ 4, 140-41. She brings this employment discrimination action against her former employer, The Washington Times, LLC ("the Times"), and two of its employees, R. Scott Daeschner, Single Copy Sales Manager, and James Dick of the Times' Loss Prevention Section, under the Americans with Disabilities Act of 1990 ("ADA"), *see* 42 U.S.C. § 12112 *et seq.*, the Age Discrimination in Employment Act of 1967 ("ADEA"), *see* 29 U.S.C. § 621 *et seq.*, the Equal Pay Act of 1963 ("EPA"), *see* 29 U.S.C. § 206(d), Title VII of the Civil Rights Act of 1964 ("Title VII"), *see* 42 U.S.C. § 2000e *et seq.*, and

42 U.S.C. § 1981.[1] *See id.* (caption); *see also id.* ¶¶ 6-7.

From August 2005 until her termination on October 17, 2006, plaintiff held the position of Single Copy Supervisor and she oversaw delivery routes for the Times' daily circulation newspaper in Northern Virginia. *See* Amd. Compl. ¶¶ 17, 113. The Times represented that "[e]ssential elements of Plaintiff's job included being able to take papers from the warehouse to her car and then to stores and dispensing boxes. It was also necessary to have a valid driver's license, a clean driving record, and a car." Mem. of P. & A. Supporting the Mot. to Dismiss or for More Definite Statement by Def., The Washington Times, LLC ("Times Mot.") at 3.

On November 1, 2005, "[w]hile loading bundles of newspapers into her vehicle," plaintiff sustained an injury to her right hand and forearm. Amd. Compl. ¶ 23. She sought medical attention, and on November 5, 2005, she was "placed in an wrist/arm brace, and on Work restriction of limited lifting." *Id.* ¶ 24. In the following months, disagreements arose pertaining to plaintiff's injury and its impact on her ability to perform her duties. *See id.* ¶¶ 46-55. On January 5, 2006, she was issued a written warning "for missing Doctor's appointments while on vacation." *Id.* ¶ 27. On March 2, 2006, plaintiff was issued a written warning "for Insubordination and Disrespectful and Courteous Conduct . . . for incidents from 2 and 4 weeks earlier," *id.* ¶ 58, and on March 7, 2006, plaintiff was issued an oral warning arising from a separate incident, *id.* ¶ 64, and these incidents apparently pertained to plaintiff's work restrictions and duties she was unable to perform. Plaintiff sought treatment at a hospital emergency room

---

[1]     Plaintiff also named Randall Casseday, Tim Gibson and Rick Epstein, the Times' Human Resources Director, Single Copy Operations Manager, and Circulation Director, respectively, as defendants to this action. Amd. Compl. ¶¶ 5, 8-9. These defendants have been dismissed without prejudice as parties to this action due to improper service of process.

on March 24, 2006 after experiencing "tingling in [her] fingers/spasms" she described as "an exacerbation of the Work-comp injury," and thereafter her arm was placed "in [a] sling" and she was given instructions to rest for three days. *Id.* ¶ 67. On March 29, 2006, plaintiff was issued "a Written Reprimand for 3 consecutive unexcused absences" from work. *Id.* ¶ 73. Thereafter, plaintiff underwent "Work Hardening Rehab for 3.5 months," during which time she "was still expected to be physically present at the office" to perform her other duties. *Id.* ¶ 89; *see id.* ¶¶ 90-91, 93-95. Apparently plaintiff returned to full duty on or about July 1, 2006. *See id.* ¶ 100.

While driving on August 31, 2006, plaintiff was pulled over by a police officer, who discovered that plaintiff's driver's license had been suspended for a period of 90 days. Amd. Compl. ¶¶ 103-04. Plaintiff was not able to obtain a restricted license or written confirmation as to the date on which her license would be reinstated. *See id.* ¶ 110. Plaintiff's lack of a valid driver's license apparently triggered her termination on October 17, 2006.[2] *See id.* ¶ 113.

On or about May 24, 2007, plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a formal charge of discrimination based on race, sex, retaliation, and disability, occurring between January 9, 2006, and October 17, 2006. Times Mot., Ex. 1 (Charge of Discrimination No. 570-2006-01419). In relevant part, the charge stated:

> I was hired by Washington Times in August of 2004. I was employed as a Single[] Copy Supervisor when I was terminated on 10/17/06. Between 02/15/06 and 10/17/06 Respondent refused to provide a reasonable accommodation for my disability. Between January 2006 and 10/17/06 I was treated differently than the white Single[] Copy

---

[2]     "Plaintiff DENIES that failure to maintain a license was the final straw in a long list of issues" culminating in her termination. Statement of P. & A. in Opp'n to Dismiss or for More Definite Statement by Def., The Washington Times, LLC ("Pl.'s Opp'n to Times Mot.") at 7 (page number designated by the Court). In her view, the "termination was retaliatory, and [] license issue was just a stratagem or pretext to hide the retaliation." *Id.*

> Supervisor David Richards. I was required to assist Mr. Richards but
> he was not required to assist me. I believe I have been discriminated
> against based on my disability and in retaliation for asking for a
> reasonable accommodation in violation of the Americans with
> Disabilities Act of 1990 as amended. I also believe I have been
> discriminated against based on my race, Black, and my sex, female,
> in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* at 1. Plaintiff filed an Amended Charge on October 25, 2007, and added a claim for

discrimination based on the Equal Pay Act:

> In addition to the discrimination charge that I filed with the EEOC on
> May 24, 2007, I would like to amend additional allegations to my
> original charge. Approximately in June 2006, I became aware that I
> received lower bonuses even with my high sales record at the time.
> I also was paid lower than my similarly situated male coworker who
> performed the same job duties as me. Furthermore, I have not
> received an evaluation or a raise that were [sic] due in August 2006.
> On the other hand, my counterpart had received his.
>
> I believe that I have been discriminated against because of my race
> (Black), sex (female), and retaliated against in violation of Title VII
> of the Civil Rights Act of 1964, as amended. I believe that I have
> been discriminated against because of my disability, in violation of
> the Americans with Disabilities Act of 1990, as amended. I also
> believe that I have been discriminated against in violation of the
> Equal Pay Act of 1963, as amended.

*Id.* at 2 (Amendment to Charge No. 570-2006-01419). The EEOC was "unable to conclude that

the information obtained [during its investigation] establishe[d] violations of the statutes," and,

accordingly, dismissed the charge on July 10, 2008. Compl., Ex. (Dismissal and Notice of

Rights, EEOC Charge No. 570-2006-01419 (Amended)).

## II.  DISCUSSION

### A.  Disability Discrimination (Count One)

Daeschner and Dick move to dismiss Count One of plaintiff's Amended Complaint on

4

the ground that they cannot be held liable under the ADA in their individual capacities. *See* Statement of P. & A. Supp. the Mot. to Dismiss or for More Definite Statement by Defs. R. Scott Daeschner and James Dick ("Daeschner & Dick Mot.") at 2.

"The ADA prohibits discrimination *by an employer* against a qualified individual with a disability who with or without reasonable accommodation can perform the essential functions of the position that the person desires to hold." *Amariglio v. Nat'l R.R. Passenger Corp.*, 941 F. Supp. 173, 177 (D.D.C. 1996) (citing 42 U.S.C. § 12112(a)) (emphasis added). Because an individual cannot be held liable under the ADA, the Court concludes that Count One must be dismissed as to Daeschner and Dick in their individual capacities. *See id.* at 178 (dismissing the individual defendants from the suit "because the ADA, like Title VII and the ADEA, does not provide for liability against individuals"); *Smith v. Janey*, __ F. Supp. 2d __, __, 2009 WL 2584821, at *5 (D.D.C. Aug. 24, 2009) ("[T]here is no individual liability under Title VII, the ADEA or the ADA"); *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 187 (D.D.C. 1997) (dismissing ADA claim against defendant police officers in their individual capacities).

*B.   Age Discrimination (Count Two)*

### 1. Plaintiff Failed to Her Available Exhaust Administrative Remedies With Respect Her Age Discrimination Claim

The Times, Daeschner and Dick move to dismiss plaintiff's ADEA claim on the ground that plaintiff failed to exhaust administrative remedies. Times Mot. at 5-7; Daeschner & Dick Mot. at 2-3.

Generally, a plaintiff cannot bring a claim in a lawsuit unless she first exhausts her administrative remedies as to that claim. *See* 29 U.S.C. § 626(d) (providing that "[n]o civil

action may be commenced by an individual . . . until . . . after a charge alleging unlawful discrimination has been filed with the [EEOC]"); *see Washington v. Washington Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). A subsequent civil action is limited to the matters addressed at the administrative level. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) ("A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'") (citation omitted), *cert. denied*, 519 U.S. 811 (1996). The Court may dismiss a claim when a plaintiff fails to exhaust administrative remedies before filing a discrimination action. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies), *cert. denied*, 543 U.S. 809 (2004).

In this case, plaintiff filed a formal charge of discrimination on May 24, 2007, and amended the charge on October 25, 2007. *See* Times Mot., Ex. 1 (Charge No. 570-2006-01419 and Amendment). Plaintiff neither checked the box for discrimination based on age, nor included allegations of age discrimination in the text of her charge. *See id.* In her opposition to defendants' motions, plaintiff merely argues, without support, that her "Complaint has sufficient facts for which a claim for relief can be granted," and that "the Complaint does identify adverse action that were [sic] suffered because of Plaintiff's age." Statement of P. & A. in Opp'n to Dismiss or for More Definite Statement by Def., The Washington Times, LLC ("Pl.'s Opp'n to Times Mot.") at 4.

Because plaintiff did not pursue an age discrimination claim before the EEOC, she may not pursue an age discrimination claim in this Court. *See Peterson v. Archstone*, 601 F. Supp. 2d

123, 127 (D.D.C. 2009) (dismissing retaliation claim where EEOC charge alleged only age

discrimination); *Alfred v. Scribner Hall & Thompson, LLP*, 473 F. Supp. 2d 6, 9 (D.D.C. 2007)

(dismissing age discrimination claim where the EEOC charge alleged only race discrimination).

2.  Daeschner and Dick Cannot Be Held Liable In Their
    Individual Capacities Under the ADEA

Daeschner and Dick also move to dismiss on the ground that they cannot be held

personally liable under ADEA.  Daeschner & Dick Mot. at 2-3.  The Court concurs.  *See Smith v.*

*Janey*, 2009 WL 2584821, at *5; *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d 181, 185

(D.D.C. 2008) (dismissing Title VII and ADEA claims against the individual defendants because

neither provides for liability against individual defendants in their personal capacities); *Murphy*

*v. PriceWaterhouseCoopers, LLP*, 357 F. Supp. 2d 230, 244 (D.D.C. 2004) (dismissing ADEA

claims against all individual defendants).  Count Two will be dismissed as against all defendants.

*C.  Race and Sex Discrimination under Title VII (Counts Four and Five)*

Daeschner and Dick move to dismiss plaintiff's Title VII claims on the ground that the

statute does not authorize lawsuits against supervisors in their individual capacities.  Daeschner

& Dick Mot. at 3.  The law fully supports their position.  "[W]hile a supervisory employee may

be joined as a party defendant in a Title VII action, that employee must be viewed as being sued

in his capacity as the agent of the employer, who is alone liable for a violation of Title VII."

*Gary v. Long*, 59 F.3d 1391, 1399 (D.C. Cir. 1995).  Title VII does not impose liability on

individuals in their personal capacities.  *Id.*; *Bell v. Redding*, 539 F. Supp. 2d 423, 424 n.1

(D.D.C. 2008) (dismissing individual as a party defendant because she cannot be held liable

under Title VII); *Cruz-Packer v. District of Columbia*, 539 F. Supp. 2d at 185 (same).

7

The Court concludes that Counts Four and Five will be dismissed as to defendants

Daeschner and Dick.

### D.  Retaliation (Count Five)

In Count Five, plaintiff alleges that she "engaged in protected activities under Title VII in

opposing unlawful employment practices of [the Times]," Amd. Compl. ¶ 179, and as a result

"suffered adverse employment action which were causally connected between [her] disability,

actions and the harm suffered," *id.* ¶ 180.  The pleading does not make specific allegations with

respect to 42 U.S.C. § 1981.  The Times moves to dismiss Count Five because the complaint

fails to state a retaliation claim under Title VII or § 1981.  *See* Times Mot. at 8-10.  Plaintiff

argues, without support, that "on repeated occasions [she] complained of discrimination,

regardless of whether it was based on race, sex, age, pay or disability."  Pl.'s Opp'n to Times

Mot. at 4.

Title VII prohibits an employer from "discriminat[ing] against any individual with respect

to [her] compensation, terms, conditions or privileges of employment, because of such

individual's race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and from

"discriminat[ing] against any of his employees . . . because [she] has opposed any practice made

an unlawful employment practice by this subchapter," 42 U.S.C. § 2000e-3(a) ("opposition

clause"), or "because [she] has made a charge, testified, assisted, or participated in any manner in

an investigation, proceeding, or hearing under this subchapter," *id.* ("participation clause").  "In

order to seek the protection of the opposition clause, plaintiff must be able to '"demonstrate a

good faith, reasonable belief that the challenged practice violates Title VII.'"  *Welzel v. Bernstein,*

436 F. Supp. 2d 110, 118 (D.D.C. 2006) (quoting *George v. Leavitt,* 407 F.3d 405, 417 (D.C.

Cir. 2005)).

"Section 1981, as amended by the Civil Rights Act of 1991, prohibits racial

discrimination in the 'making, performance, modification, and termination of contracts, and the

enjoyment of all benefits, privileges, terms and conditions of the contractual relationship,'"

*Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 18 (D.D.C. 2009) (quoting 42 U.S.C. § 1981),

and "encompasses claims of retaliation," *CBOCS West, Inc. v. Humphries*, __ U.S. __, 128 S.Ct.

1951, 1961 (2008). "[T]o be actionable under § 1981, the retaliation must have been in response

to the claimant's assertion of rights that were protected by § 1981." *Hawkins v. 1115 Legal Serv.*

*Care*, 163 F. 3d 684, 693 (2d Cir. 1998)). "An act of retaliation for engaging in activity

protected by Title VII does not give rise to a claim for retaliation that is cognizable under § 1981

unless that activity was also protected by § 1981." *Id.*

As drafted, plaintiff's Amended Complaint nowhere alleges retaliation associated with

her race, color, religion, sex, or national origin, and thus fails to allege retaliation in connection

with acts prohibited under Title VII or § 1981. Neither Title VII nor § 1981 prohibits

discrimination based on a person's disability. *Henneghan v. District of Columbia Pub. Sch.*, 597

F. Supp. 2d 34, 37-38 (D.D.C. 2009) (dismissing *sua sponte* Title VII claim because "the

plaintiff's factual allegations of disability discrimination do not state a claim upon which relief

can be granted . . . under the Civil Rights Act of 1964"); *DuBerry v. District of Columbia*, 582 F.

Supp. 2d 27, 40 (D.D.C. 2009) ("Section 1981 does not prohibit discrimination on the basis of

disability.").

The Court concludes that the Amended Complaint fails to state a retaliation claim under

either Title VII or § 1981, and Count Five will be dismissed.

## III.  CONCLUSION

The Court concludes that the age discrimination claim must be dismissed as to all defendants because plaintiff failed to exhaust her administrative remedies with respect to this claim before filing this lawsuit.  Further, the Court concludes that the disability discrimination, age discrimination, and Title VII race and sex discrimination claims against defendants Daeschner and Dick in their individual capacities must be dismissed.  Defendants Daeschner and Dick will be dismissed as party defendants, Counts Two and Five will be dismissed, and Counts One, Three, and Four may proceed as against The Washington Times, LLC.

An Order consistent with this Memorandum Opinion is issued separately.

_____
RICHARD J. LEON
United States District Judge

Date:
11/8/09